FARREN, Respondent, *v.* COMMISSIONERS OF BUFFALO COUNTY,
Appellants.

**1. Constitutional Law—Legislative Power.**

R. St. U. S. § 1860, confers express power upon the legislature of the
territory to prescribe the qualifications of voters.

**2. Voters—Elections—Counties—Registration—Qualifications of
Voters.**

Section 47, c. 27, Pol. C., after prescribing certain qualifications, pro-
vides that all persons who "shall have complied with the provisions of
any law which is now, or may in the future be, in force relating to the
registration of voters, shall be entitled to vote." After this there was
a law passed with reference to registration, (Laws 1881, c. 122,) whereby,
to be entitled to vote, the elector must have been registered, or must
qualify, at the time of offering his vote, by furnishing the judges with
his affidavit, stating certain facts showing him to be a legal voter, etc.
*Held,* that the requirements of the act of 1881 were not mere regulations,
but qualifications that the elector must have met before being entitled
to vote; and an election to change the county-seat, where there had
been no registration, or qualification of voters by affidavit, as required
by said act, (on contest for that purpose,) *held,* void.

**3. Registration Act 1881, c. 122, § 15 — County Boundaries —
Indian Reservation.**

The registration act 1881, c. 122, § 15, applies to counties bordering on
the Missouri river. etc. The act 1873, c. 16, § 26, bounds Buffalo county
by the Missouri river, but that part is an Indian reservation. *Held,* that
the act applied to Buffalo county.

(Argued May 21, 1887; affirmed May 26, 1887; opinion filed February 14,
1888.)

Appeal from the district court of Brule county; Hon. BART-
LETT TRIPP, Judge.

*J. M. Long,* for appellant.

The only ground upon which this contest is based is the alle-
gation that there was no meeting of the board of registry prior
to said election, and no evidence was furnished by the voters at
the time of presenting themselves to the judges of election and
voting of their right to vote.

For the purposes of this case, under the registry act, the
court held that Buffalo county was one of the counties in which
the registry law was in force.

Buffalo county was organized in January, 1885. The registra-
tion act went into force in March, 1881, and was to be in force
in the counties bordering on the Missouri river. There was no
such county as Buffalo, in which this law could be enforced.
The law provides that any other county could adopt it if they
so desire. There is no claim that Buffalo county ever adopted
this act, and, being special legislation, there can be no implica-
tion drawn from the law that it was to extend to and be in force
in counties "in future," and an outlying district is not a county
until it is organized for political purposes. The law does not
say, "all counties now or hereafter bordering on the river," but
says, "in those counties bordering on the Missouri river." In
fact, there is not now, and never has been, any such a county
bordering on the Missouri river. A portion of the Sioux In-
dian reservation lies between the county and the river. Sec-
tion 1839, U. S. Statute, in creating Dakota, declares that this
very district shall be excepted out of the boundaries, and con-
stitute no part of any territory, and that the territory shall not
have any jurisdiction over such country, and any act extending
lines of a county into the Sioux country was void to that extent.
McCrary, Elections, §§ 53, 54.

Upon the second ground, that, if chapter 122, Laws of 1881,
are in force, we think there is nothing in this case upon which
to declare this election void. Section 13 of chaper 27 of the Po-

litical Code says that "all persons voted for by an elector at any general or special election shall be on one ballot." Section 14 of the same chapter declares what the qualifications of an elector shall be. Section 1 of chapter 122, Laws of 1881, says that all persons qualified and entitled to vote at the ensuing election shall be listed, and that in new election precincts they shall make a list from the best means at their command.

There can be but one construction to be placed on these sections as to who are qualified by law to vote at an election. The statute invariably uses the word "elector" when applying the term as to qualifications of a voter; hence an elector is, ecifically, a person legally qualified to vote in any county; and section 1 of the registry act says the list shall be made and contain the names of all persons qualified to vote at the ensuing election. If this be so, then the registry law is not a qualification. The qualifications of voters are explicit, exclusive, and unqualified by any exceptions, provisos, or conditions; and the organic law either directly or by implication confers no authority upon the legislature to change, add to, or abridge them in any respect.

If the persons entitled to vote have the qualifications before the opening of the board of registry, or become qualified after the second meeting of the board, then the registry in no way adds to or abridges the right to vote; and, if this be true, then the registry law at most can only be a regulation.

Section 47, c. 27, Pol. C., says that every male person above the age of 21 years, who is a citizen of the U. S., or has declared his intention to become such, and resided a certain time in the territory and his precinct, and shall have complied with all the provisions of any registry law, shall be entitled to vote, and all such persons shall be eligible to any office in said territory.

Supposing a person is voted for for an office, whose name is not on the register of voters, and who has not furnished an affidavit provided for by section 8 of the registry law; or suppose he comes in the prohibited class in subdivision 4 of section 1860

of the Revised Statutes,—this clearly distinguishes the difference between the law-making qualification of voters and the law regulating manner of holding elections. The registry law is clearly a regulation. The qualifications exist with or without a registry law. Section 8 of the registry law says: "Any person may be challenged, and the same oaths required as now or hereafter may be prescribed by law." What oath? The oath as to qualification of an elector.

Section 13 of chapter 27 of the Political Code says: "All persons voted for by an elector at any general election or special election shall be on one ballot." Section 6 of chapter 21 declares that the qualified voters are empowered to select the place of the county-seat by ballot at the first general election held in the county.

Section 2007 of the U. S. Statutes declares that "acting thereon shall be deemed and held as a performance in law." It is admitted by respondent that these voters were not challenged, nor any objection made to their voting, and the presumption must be that they were legal voters, and so known to the judges of election; and when the several persons offered the votes to the judges, and they were received and deposited in the ballot-box, they acted on that ballot, and it is deemed and held a performance in law. Section 2007, U. S. Statute; *Dale* v. *Irwin*, 78 Ill. 185.

Section 41 of chapter 27 says that no returns shall be refused by the canvassing board in making the estimate of votes for any informality in holding an election. The most that can be claimed for the registry law is that it is an informality. *Sharon* v. *Wooldrick*, 18 Minn. 351, (Gil. 325.)

Even should the court set aside the returns, because the judges had acted illegally, the election will stand, and the duty remains to declare what the true state of the vote is. McCrary, Elections, § 368; 16 Mich. 323.

There is no claim of fraud; no claim that any one was injured; and it is conceded that Buffalo Center received a majority of all the legal voters' votes in the county. *Dobyns* v.

*Wendon*, 50 Ind. 298; *Taylor* v. *Taylor*, 10 Minn. 107, (Gil. 81.)

The rules prescribed for conducting an election are directory merely, not jurisdictional or imperative. *Pratt* v. *People*, 26 Ill. 72; *Knox Co.* v. *Davis*, 63 Ill. 405; *Dupage Co.* v. *Scott*, 65 Ill. 360; *People* v. *Cook*, 8 N. Y. 67; *Day* v. *Kent*, 1 Ore. 123; *Taylor* v. *Taylor*, 10 Minn. 107, (Gil. 81;) *Edson* v. *Child*, 18 Minn. 351, (Gil. 43;) *McKinny* v. *O'Conner*, 26 Tex. 5; *Jones* v. *State*, 1 Kan. 279; *Juker* v. *Com.*, 20 Pa. St. 493; Brightly, El. cc. 448–449–450.

The presumption of the legality in no way depends upon the omission to challenge or object to it, or any presumed knowledge of the judges of the election, but it arises from the fact of the depositing of the ballot in the ballot-box. A vote deposited is presumed to be legal, until there is evidence to the contrary. *Clark* v. *Robinson*, 88 Ill. 498; *State* v. *Baker*, 38 Wis. 89; *County* v. *People*, 65 Ill. 362; *Fry* v. *Booth*, 19 Ohio St. 25.

And it was so distinctly held, on the contest of an election, that unregistered persons who had voted at the election without having been registered, and without having furnished proof that they were entitled to vote, as required by the registry law, should not be rejected. *Dale* v. *Irwin*, 78 Ill. 185; *Kuykendale* v. *Harker*, 89 Ill. 126; *Hodge* v. *Linn*, 100 Ill. 402; *Clark* v. *Robinson*, 88 Ill. 504; Rev. St. Ill. 1874, p. 470, § 14; *Webster* v. *Gilmore*, 91 Ill. 324; *Taylor* v. *Taylor*, 10 Minn. 107, (Gil. 81;) *Edson* v. *Child*, 18 Minn. 351, (Gil. 43.)

It is conceded by all courts that time and place are of the essence of every election. Yet no court has held that where place had been disregarded, in the absence of fraud or undue advantage, the election would be void. The provisions as to the manner of holding elections are directory, unless it affirmatively appear that the irregularity is of a character to change the result. *Farrington* v. *Turner*, 18 N. W. Rep. 544; *Weil* v. *Calhoun*, 25 Fed. Rep. 871.

There is nothing in this law that requires voters to register in order to be qualified to select the place of choice of county-seat, for in making that choice the people simply give expres-

·sion to the public will as to where the business shall be done. *State* v. *Harvy*, 14 N. W. Rep. 246; *Co. seat Linn Co. Kansas*, 15 Kan. 500; *Osage Co.*, 16 Kan. 296; *Board* v. *Moor*, 17 Minn. 412, (Gil. 391;) *Beran* v. *Smith*, 47 Ill. 482; *People* v. *Ohio* ·*Grove*, 51 Ill. 191, 63 Ill. 405; *People* v. *Turner*, 47 Ill. 246.

The voice of the people is not to be rejected, if they in truth have spoken. *Dishon* v. *Smith*, 10 Ia. 218; *People* v. *Hoge*, 55 ·Cal. 619; *Weil* v. *Calhoun*, 25 Fed. Rep. 871.

*Goodykoontz, Kellum & Porter*, for respondent.

Congress gave our territorial government its organic act, its ·constitution, and in it expressly vested the power to fix the ·qualifications of voters in the legislative assembly. Sections 1859, 1860, R. St.

In executing this power it has provided that one of such qualifications shall be that the person "shall have complied with the provision of any law which is now, or may in future be, in force relating to the registration of voters." Section 47, c. 27, Pol. C.

Compliance with the registration act is thus made a qualification.

In Wisconsin and Pennsylvania the courts have condemned the particular registration laws, because by them, as they held, the legislature had attempted to add a new and further qualification to the qualifications which the state constitution had ·enumerated, as all that were requisite to entitle a person to vote. *Dells* v. *Kennedy*, 6 N. W. Rep. 246, dissenting opinion by TAYLOR, J., 381; *Page* v. *Allen*, 58 Pa. St. 346. This objection has no ·application here.

We insist: *First*, the organic law making the qualifications ·of voters "such as may be prescribed by the legislative assembly;" ·*second*, the act of the legislative assembly fixing as one of such ·qualifications compliance with any registry act in force in the ·territory; *third*, the act of the legislative assembly. providing ·for the registration of voters. Compliance with the registry law,

either by registration or by furnishing to the judges of election, in case of non-registration, other proof of qualifications, is affirmatively made an absolute and indispensable qualification and pre-requisite to the right to vote.

An effort is made to avoid the effect and operation of this registry law, so far as the defendant county of Buffalo is concerned.

Section 15 provides that it shall only extend to and be in force in certain designated counties, "and in those counties bordering on the Missouri river, except the counties of Bon Homme, Yankton, Clay, and Union."

Buffalo county does border on the Missouri river, and is not one of the excepted counties.

Section 26, c. 16, Laws 1873, makes its west boundary the river.

The claim is made that, because that part of the county is Indian reservation, it is not one of the counties bordering on the river. Buffalo county is a creation of the statute. If there is any such territorial subdivision as Buffalo county, it is because the legislature has specifically marked out and bounded a certain parcel of its territory, and named it "Buffalo County." The legislature only can do it. They have done it by the chapter and section above quoted.

This court has no authority to erect a new Buffalo county, or define new boundaries for the one already created.

This is not a question of the authority of the legislature over an Indian reservation, nor whether this registry law is in operation on the reservation, but whether the fact that a strip of land on the west side of Buffalo county, and contiguous to the river, which is reservation, prevents the application of the registry law to the balance of the county.

THOMAS, J. The record in this case shows that there was held on the 2d day of November, 1886, in Buffalo county, Dak., a general election, at which time there was also held an election to determine the county-seat of said county. A count and canvass of the votes, as shown by the return of the canvassing

board, resulted in favor of Buffalo Center as the place of said county-seat.

This contest is organized for the purpose of declaring said election void. On the 28th day of February, 1887, this action was tried by the court below, upon an agreed statement of facts. The court, after making its findings of fact and conclusions of law, rendered a judgment that Gann Valley, and not Buffalo Center, was the county-seat of said county. To reverse this judgment, this appeal is prosecuted.

There is no disputé as to the facts of the case, and there are but three questions presented for our consideration, to-wit: Was the registration law of the territory valid? Was it in force in Buffalo county? Was it complied with by the officers of the election and the electors, at said election, in such a manner as to render said election valid?

In determining the first question, we must recur to the organic act of the territory, and see what power it confers upon the legislature of the territory in reference to fixing the qualifications of voters. We find, upon an examination of its provisions, that the power to prescribe the qualifications of voters is expressly conferred upon that body. Organic Law, § 1860.

Under the power thus conferred by the congress of the United States, the legislature, after prescribing various qualifications for voters, says that, in addition to such qualifications, all persons who "shall have complied with the provisions of any law which is now or may in the future be in force relating to the registration of voters, shall be entitled to vote." Section 47, c. 27, Rev. Codes.

The legislature subsequently enacted a law "relating to the registration of voters," in which it provides for boards of registration in towns, cities, wards, and precincts, who shall meet on Tuesday, two weeks prior to any general election, and make a list of all persons qualified to vote at the ensuing election whose names are known to them to be electors in said precinct, or who shall make application to said board to be registered, and found to be electors in said precinct. Laws 1881, c. 122.

This registration is made, by the law above quoted, a qualification which the elector must possess before he will be entitled to vote—not a mere regulation, as it is in some of the states having laws on this subject. But the voter has another means within his power to become qualified in case he has failed to comply with the registry law. He can do this by furnishing to the judges of election, at the time of offering his vote, his affidavit in writing, stating that he is an inhabitant of said precinct, and resides therein, giving his place of residence and the length of time he has so resided there; and also by proving, by the oath of a householder and registered voter of the precinct in which he offers to vote, that he knows such person to be an inhabitant of the precinct, giving his place of residence therein. Laws 1881, c. 122, § 8.

To be entitled to vote, one or other of these requirements must be met by the elector, and a failure to do so renders him disqualified to exercise the right of suffrage. If the law in this regard were intended as a mere regulation, instead of a qualification, the rule would not be so strict. But, in our opinion, it makes the compliance with the requirements of this law just as essential to the qualification of a voter in this territory as the attainment of majority, or the time of residence in the territory and precinct.

It is alleged by the contestant and respondent, and admitted by the appellants, that there was no such thing as a registry made by the officers; and, in its absence, not an affidavit of a single voter was offered by him at the time of voting, and not the slightest effort was made by either the officers of election or the voters to comply with the law in this regard.

We hold that one or the other of these requirements must be complied with before the elector can cast a legal ballot.

But the appellants seek to avoid the operation of the registry law by claiming that, under section 15 of the registry act of 1881, Buffalo county is exempt therefrom, because said county does not border on the Missouri river. The act, by its terms, applies only to certain specified counties, and "those counties

bordering on the Missouri river, except the counties of Bon Homme, Yankton, Clay, and Union."

The act of 1873, c. 16, § 26, bounds Buffalo county by the Missouri river. But appellants contend that, because that portion of Buffalo county bordering on said river is Indian reservation, said county does not extend to said river. Counties are the creatures of statute; and, as the law creating Buffalo county extends it to and bounds it on one of its sides by the Missouri river, the position taken by counsel for appellants, that it is not so bounded, is clearly untenable. The fact that a portion of the county is Indian reservation cannot and does not, in our opinion, change the boundary thereof.

We are therefore of the opinion that the registry law of this territory is valid, and a compliance therewith constitutes a qualification of suffrage; that Buffalo county is not exempt from its provisions, and that the law was in no respect adhered to or complied with in the said election; and that said election was consequently void and of no effect. The judgment of the district court is in all things affirmed.

All the justices concurring.